UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

|  |  |
|---|---|
| In re:<br><br>LEA L. GILFORD<br><br>Debtor | Chapter 13<br>Case No. 16-14270-MSH |

**MEMORANDUM OF DECISION ON MOTION OF DEBTOR FOR SANCTIONS FOR VIOLATION OF THE AUTOMATIC STAY**

On November 14, 2016, Lea L. Gilford, the debtor in this case, filed a motion for sanctions against Theodore Gilford, her former husband, alleging that he had willfully violated the automatic stay provisions of the Bankruptcy Code[1] and seeking an award of actual and punitive damages from him pursuant to Bankruptcy Code § 362(k). At Ms. Gilford's request I held an emergency hearing on November 17, 2016, to determine what, if any, action needed to be taken immediately, followed by an evidentiary hearing on February 16, 2017.

Before, elaborating on the particulars of those hearings, it will be useful to recount the relevant background facts, which are substantially undisputed and which, in any event, are hereby incorporated as my findings of fact pursuant to Fed. R. Bankr. P. 7052 for purposes of ruling on Ms. Gilford's motion.

On November 8, 2016, the day after Ms. Gilford filed her voluntary petition commencing this case, a hearing took place in the Essex County Probate and Family Court on a motion for contempt brought by Mr. Gilford against Ms. Gilford for violating prior orders of the probate court. Mr. Gilford had requested, among other things, that Ms. Gilford be ordered to immediately

---

[1] References to the Bankruptcy Code or Code are to 11 USC. §101 et seq.

deliver to him a motor vehicle in her possession. Under their divorce agreement incorporated into the probate court's judgment of divorce, Ms. Gilford was obligated to make monthly lease payments on the vehicle which, although leased by Mr. Guilford, was in her sole possession. When Ms. Gilford fell behind on her payments, the lease finance company threatened to take action against its lessee, Mr. Gilford. This justifiably upset Mr. Gilford and led to his filing the contempt motion.

Mr. Gilford's contempt motion in the probate court had initially been scheduled for hearing on September 22, 2016. At that hearing, Ms. Gilford entered into a stipulation with Mr. Gilford in which she agreed to refinance the car lease so as to get it out of Mr. Gilford's name. The probate court continued the motion to November 8, 2016, to monitor Ms. Gilford's compliance. Ms. Gilford did not refinance the car lease as she had agreed. Faced with the possible loss of her sole means of transportation and perhaps the wrath of the probate court, Ms. Gilford chose to file her bankruptcy petition the day prior to the continued hearing on Mr. Gilford's contempt motion. The probate court hearing went forward nevertheless, which brings us back to the matter at hand.

The emergency hearing before me on November 17, 2106, on Ms. Gilford's motion for sanctions was attended by Ms. Gilford's attorney, Mathew Martin, and Mr. Gilford's attorney, Christine A. Faro, The hearing was non-evidentiary. Ms. Faro on behalf of Mr. Gilford offered two defenses to Ms. Gilford's motion. First, she claimed that when she prosecuted Mr. Gilford's contempt motion in the probate court on November 8, 2016, neither she nor Mr. Gilford was aware of Ms. Gilford's bankruptcy filing the day before. Second, she argued that the automatic stay did not apply to the probate court hearing in any event because the automobile which was

2

the subject of her contempt motion and demand for turnover, was leased, not by Ms. Gilford but by Mr. Gilford, and thus was not property of Ms. Gilford's bankruptcy estate.

As to Mr. Gilford's first defense, Ms. Gilford's counsel, Mr. Martin, stated that he had informed Ms. Faro about Ms. Gilford's bankruptcy filing prior to the probate court hearing. As to Mr. Gilford's second defense, I ruled at the hearing that while the motor vehicle may not have been property of Ms. Gilford's bankruptcy estate, it was undisputed that it was in her possession, and thus Mr. Gilford's attempt to take it away from her violated § 362(a)(3) of the Bankruptcy Code.[2] See, *In re Sullivan*, 551 B.R. 868 (Bankr. D. Mass. 2016) ("an attempt to deprive a debtor of her possessory interest in the property (even an allegedly wrongful one) remains subject to the stay").

At the conclusion of the hearing I issued the following minute order:

Hearing held. For the reasons set forth on the record, the court finds that the automatic stay does apply to the attempt by Theodore Gilford to regain possession of the vehicle in the debtor's possession. The probate court proceeding with respect to Mr. Gilford's efforts to obtain the vehicle or assert any monetary claims against the debtor is stayed until further order of this court. With respect to the request for sanctions, on or before December 19, 2016, the parties shall file such supplemental memoranda and affidavits as they deem appropriate, and also a transcript of the November probate court hearing. Thereafter, the court will either take the matter under advisement or schedule a further hearing.

In response to my order, Mr. Gilford filed a further opposition to Ms. Gilford's sanctions motion together with a copy of the transcript of the November 8, 2016 contempt hearing in the

---

[2] Section 362(a)(3) provides:

Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, . . . operates as a stay, applicable to all entities, of--

any act to obtain possession of property of the estate *or of property from the estate* or to exercise control over property of the estate. . . . (emphasis added).

3

probate court. Ms. Gilford filed a supplemental memorandum in support of her motion along with an affidavit as to her damages, and her counsel, Mr. Martin, filed an affidavit as to his legal fees and costs incurred through December 19, 2016, in connection with this matter.

In his further opposition to the sanctions motion, Mr. Gilford devoted most of his attention to arguing that the automobile was not property of Ms. Gilford's bankruptcy estate, a point already rendered irrelevant by my ruling in the November 17, 2016 minute order. On the question of knowledge of Ms. Gilford's bankruptcy case, Mr. Gilford's opposition stated that he received a suggestion of bankruptcy concerning Ms. Gilford's case "on November 8, 2016, at which time the Parties were appearing before the Essex County Probate and Family Court on the issue of the leased vehicle."

After reviewing the transcript of the November 8, 2016 probate court hearing, I concluded that sufficient grounds existed to mandate further inquiry into whether Mr. Gilford's attorney, Ms. Faro, and by imputation Mr. Gilford had knowledge of Ms. Gilford's bankruptcy filing prior to the probate court hearing. Accordingly, I scheduled an evidentiary hearing to enable the parties to present evidence on that issue.

The evidentiary hearing took place on February 16, 2017. Ms. Gilford, Mr. Gilford and Ms. Faro testified under oath. Various documents, including the transcript of the probate court hearing, were submitted into evidence by the parties. Based on the testimony and documents, in addition to my findings above, I find that Ms. Faro knew of Ms. Gilford's bankruptcy filing as early as the afternoon of November 7, 2016, when she received an email message (movant's exhibit #5) from Ms. Gilford's attorney, Mr. Martin, informing her of the bankruptcy court docket number assigned to Ms. Gilford's case and advising her he that would bring a suggestion

4

of bankruptcy to the probate court the next day. Thus Ms. Faro's representation to me at the November 17th hearing that she did not know of Ms. Gilford's bankruptcy filing prior to the probate court hearing was false. I find further that the next morning when the Gilfords and their respective attorneys met in the probate court, hours prior to the start of the contempt hearing, Mr. Martin attempted to hand Ms. Faro a copy of the suggestion of bankruptcy but Ms. Faro refused to accept it. I also find that Mr. Martin then gave a copy of the suggestion of bankruptcy to the court clerk and was advised by the clerk that the hearing would be proceeding. Finally, I find that with actual knowledge of the pendency of Ms. Gilford's bankruptcy case, Ms. Faro, rather than requesting the probate court stay or continue the matter until she could obtain stay relief here, proceeded with the hearing on the merits where she pressed her request that the probate court order Ms. Gilford to deliver the automobile to Mr. Gilford.

Fortunately, the probate judge accepted Mr. Martin's representation that Ms. Gilford's bankruptcy filing had an impact on the proceedings before her and, without ruling on the contempt motion, ordered the parties to submit additional pleadings addressing the effect of Ms. Gilford's bankruptcy case on the contempt motion. That was rendered unnecessary by my minute order of November 17, 2016, which Ms. Gilford filed with the probate court.

Having previously ruled that it was a stay violation for Mr. Gilford to attempt to regain possession of the automobile in Ms. Gilford's possession on the date of her bankruptcy filing, it is left for me to rule on whether the violation was willful within the meaning of Bankruptcy Code § 362(k) and if it was, to assess damages.

Under Bankruptcy Code § 362(k)(1), "[e]xcept as provided in paragraph (2) [which is not applicable here], an individual injured by any willful violation of a stay provided by this

5

section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." The burden is on the debtor alleging violation of the automatic stay "to demonstrate, by a preponderance of the evidence, that a violation of the automatic stay has occurred, that the violation was willfully committed by the respondent, and that the debtor suffered damage as a result of the violation." *In re Panek*, 402 B.R. 71, 76 (Bankr. D. Mass. 2009) (footnote and citations omitted). "The standard for a willful violation of the automatic stay under § 362(k) is met if there is knowledge of the stay and the defendant intended the actions which constituted the violation." *Fleet Mortg. Group v. Kaneb*, 196 F.3d 265, 269 (1st Cir. 1999). Specific intent to violate the automatic stay is not a requirement of a willful violation. *Id.* "A good faith belief in a right to the property is not relevant to a determination of whether the violation was willful." *Id.* at 268-69.

Based on my findings, Ms. Gilford has carried her burden to prove a willful violation of the stay by Ms. Faro, acting on behalf of Mr. Guilford. Ms. Faro knew about Ms. Gilford's bankruptcy filing as early as the day prior to the probate court hearing. It has been suggested that Ms. Faro did not believe the email she received on November 7, 2016, about Ms. Guilford's bankruptcy filing and that is why she refused to accept the suggestion of bankruptcy when Mr. Martin tried to hand it to her prior to the hearing on November 8, 2016 and instead prosecuted Mr. Gilford's motion for contempt. Ms. Faro cannot hide behind her skepticism of Mr. Martin's representation that Ms. Gilford filed bankruptcy on November 7, 2016. She could easily have checked the bankruptcy court's records online or by phone to confirm if the information being provided by Mr. Martin was accurate. She chose not to check and thus she and her client must suffer the consequences of her guessing wrong.

6

Having determined that a willful stay violation has occurred, Code § 362(k) requires me to order that Ms. Gilford recover her actual damages. The statute is silent as to the source of that recovery but the implication is unmistakable that the source would be the stay violator, here Ms. Faro acting on behalf of Mr. Gilford.

The evidence in the form of unrebutted affidavits submitted by Ms. Gilford and Mr. Martin establishes that as a result of the stay violation Ms. Gilford incurred legal fees and costs of $3402, and suffered emotional distress and two days of missed work. No evidence was presented as to the value of either her emotional distress or lost wages although in one of her prayers for relief Ms. Gilford requests an award of $5000 for emotional distress and punitive damages without allocating between the two distinct categories.

The evidence being inadequate for me to place a value on Ms. Gilford's emotional distress or lost wages, I find that Ms. Gilford suffered actual damages in the amount $3402, her attorney fees and costs, and will assess those damages against Ms. Faro and Mr. Gilford, jointly and severally.

Code § 362(k) also authorizes the assessment of punitive damages where appropriate. I find the conduct of Ms. Faro, specifically her behavior in connection with the probate court matter and her false statement to me as to her knowledge of Ms. Gilford's bankruptcy, to warrant the assessment of punitive damages. I will assess those damages against Ms. Faro individually in the amount of $3500.

A separate order consistent with this memorandum shall enter.

At Boston, Massachusetts this 3rd day of May, 2017.

By the Court,

Melvin S. Hoffman
U.S. Bankruptcy Judge

Counsel Appearing:   Matthew Martin, Esq.
Danvers, MA
for Lea L. Gilford

Christine Ann Faro, Esq.
Beverly, MA
and
Christopher Parker, Esq.
Law Offices of Christopher Parker
Beverly, MA
for Theodore Gilford